JASON R. HULL [11202]
ANIKKA T. HOIDAL [16489]
**MARSHALL OLSON & HULL, PC**
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655
JHULL@MOHTRIAL.COM
AHOIDAL@MOHTRIAL.COM

PAUL J. DOOLITTLE*
POULIN | WILLEY | ANASTOPOULO, LLC
32 ANN STREET
CHARLESTON, SOUTH CAROLINA 29403
TELEPHONE: 803.222.2222
PAUL.DOOLITTLE@POULINWILLEY.COM

ATTORNEYS FOR PLAINTIFFS AND
PROPOSED CLASS COUNSEL

*Pro Hac Vice Forthcoming*

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CELINA PADILLA, individually and on behalf of others similarly situated, | **COMPLAINT** |
| Plaintiff, | **[Proposed Class Action]** |
| v. | **JURY TRIAL DEMANDED** |
| GREYSTAR REAL ESTATE PARTNERS, LLC, d/b/a "Greystar," a limited liability company; | Case No. _____ |
| GREP GENERAL PARTNER, LLC, d/b/a "Greystar," a limited liability company; | |
| GREYSTAR MANAGEMENT SERVICES, LLC, d/b/a "Greystar," a limited liability company; | |
| GREYSTAR RS NATIONAL, LLC, d/b/a "Greystar," a limited liability company, and | |
| GREP SOUTHWEST, LLC, d/b/a "Greystar," a limited liability company, | |
| Defendants. | |

1

## CLASS-ACTION COMPLAINT

Plaintiff Celina Padilla ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint ("CAC") against Defendants Greystar Real Estate Partners, LLC; GREP General Partner, LLC; Greystar Management Services, LLC; Greystar RS National, LLC; GREP Southwest, LLC (collectively "Greystar" or "Defendants"), based upon information and belief, as well as her personal knowledge and in support states the following.

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff on behalf of herself and all others similarly situated arising out of Greystar's deceptive, unfair, and illegal hidden or junk Utility Reimbursement fees ("Utility Fees") charged to tenants since at least 2019 to the present.

2.      Plaintiff brings this action because of Defendant's false marketing, false advertising, and breaches of consumer protection statutes.

3.      Defendant is a self-proclaimed leading, fully integrated real estate company offering expertise in investment management, development, and management of rental housing properties globally.[1]

4.      Greystar touts themselves as a company with a "winning strategy and a focus on people…guided by the Mission of enriching the lives we touch by doing things the right way."[2]

5.      Unfortunately, Greystar's supposed focus on people is now overshadowed by its focus on profits.

---

[1] https://www.greystar.com/about-greystar/about (last accessed April 29, 2025).
[2] *Id.*

6.     In January 2025, the Federal Trade Commission (the "FTC") and the State of Colorado filed a complaint against Greystar alleging that, since at least 2019, Greystar has "used deceptive advertising to entice consumers into applying for rental housing, and then bilked those consumers out of hundreds of millions of dollars by charging 'Hidden Fees' (mandatory, fixed fees that are not included in the advertised price) for itself and its landlord clients."[3]

7.     In addition to the FTC Allegations, Plaintiff has also found that many Fees, labeled as Utility Reimbursement Fees, are never disclosed to consumers (until consumers are billed for them) or provided for in Greystar's lease agreements.

8.     Many (if not all) of the Utility Reimbursement Fees that Greystar charges their tenants on a monthly basis are not authorized or even mentioned in Greystar's lease agreements with tenants.

9.     Each month, Greystar assesses small "Utility Reimbursement Fees" of approximately $1.00- $5.00 (many of which are not provided for in Greystar's lease agreements) in hopes that these charges will go unnoticed and uncontested by tenants.

10.    Many, if not all, of these Utility Reimbursement Fees serve no legitimate purpose but to increase Greystar's profits and inflate its bottom line at tenants' expense.

11.    Plaintiff brings this action against Greystar seeking redress for its unlawful conduct and asserting claims for: (i) breach of contract; (ii) breach of implied covenant of good faith and fair dealing; (iii) violations of the Utah Deceptive Trade Practices-Consumer Protection Act; (iv) unjust enrichment; and (v) declaratory relief.

---

[3] *FTC, et al. v Greystar, et al.*, Case No. 1:25-cv-00165, ECF No. 1.

12.     Plaintiff seeks remedies including, but not limited to, compensatory damages, nominal damages, and equitable and injunctive relief.

## JURISDICTION AND VENUE

13.     This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse [4]from Defendant, and (4) there are more than 100 class members.

14.     The Court has general personal jurisdiction over Defendants because, personally or through their agents, Defendants operate, conduct, engage in, or carry on businesses or business ventures in this State; they are registered with the Secretary of State as a corporation in this State; they maintain their headquarters in this State; or committed tortious acts in this State.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, Defendants have received substantial revenue and profits from their Fees in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

16.     Plaintiff Celina Padilla is an individual and citizen of the State of Utah residing in the city of Westhaven, Utah.

---

[4] It is believed that the defendant operated facilities across the United States.

17.     Defendant Greystar Real Estate Partners, LLC ("GREP LLC"), also doing business as "Greystar," is a Delaware limited liability company with its principal place of business at 465 Meeting Street, Suite 500, Charleston, South Carolina 29403.  GREP LLC is a multi-family rental property owner, developer, and manager, with offices located across the United States.  Alongside Defendant GREP General Partner, LLC, and through its subsidiaries, GREP LLC manages rental properties across the United States.  It conducts its property management business through a web of subsidiaries, including Defendants Greystar Management Services, LLC, Greystar RS National, LLC, Greystar California, Inc., and GREP Southwest, LLC.  At all times material to this Complaint, GREP LLC has advertised, marketed, promoted, offered, leased, and managed the rental of apartment and residential units to consumers in this District and throughout the United States.

18.     Defendant GREP General Partner, LLC ("GREP General Partner"), also doing business as "Greystar," is a Delaware limited liability company with its principal place of business at 465 Meeting Street, Suite 500, Charleston, South Carolina 29403.  At times material to this Complaint, through its role as general partner in Greystar Management Services, LP (predecessor to Greystar Management Services. LLC) and other Greystar-related limited partnerships, GREP General Partner has advertised, marketed, promoted, offered, leased, and managed the rental of apartment and residential units to consumers in this District and throughout the United States.

19.     Defendant Greystar Management Services, LLC ("GS Management Services"), also doing business as "Greystar," is a Delaware limited liability company with its principal place of business at 465 Meeting Street, Suite 500, Charleston, South Carolina 29403.  GS Management Services is a subsidiary of GREP LLC.  At times material to this Complaint, GS Management

Services operated as Greystar Management Services, LP, a limited partnership, in which GREP LLC held a 99 percent interest and GREP General Partner owned a 1 percent interest as general partner.  At all times material to this Complaint, GS Management Services has advertised, marketed, promoted, offered, leased, and managed the rental of apartment and residential units to consumers in this District and throughout the United States.  Together with Defendant Greystar RS National, LLC, and through its subsidiaries, GS Management Services acts as property manager for over 800,000 rental units nationwide (including apartments and beds in student housing properties).  At all times material to this Complaint, GS Management Services has controlled the acts and practices of its subsidiaries described below and approved of or benefited from such subsidiaries' acts and practices at issue in this Complaint.

20.    Defendant Greystar RS National, LLC ("RS National"), also doing business as "Greystar," is a Delaware limited liability company with its principal place of business at 465 Meeting Street, Suite 500, Charleston, South Carolina 29403.  RS National is a wholly owned subsidiary of GREP LLC.  At all times material to this Complaint, RS National has advertised, marketed, promoted, offered, leased, and managed the rental of apartment and residential units to consumers in this District and throughout the United States.  Together with Defendant GS Management Services, and through its subsidiaries, RS National acts as property manager for over 800,000 rental units nationwide (including apartments and beds in student housing properties).  At all times material to this Complaint, RS National has controlled the acts and practices of its subsidiaries described below and approved of or benefited from such subsidiaries' acts and practices at issue in this Complaint.

21.    Defendant ("GREP Southwest"), also doing business as "Greystar," is a limited liability company with its principal place of business at 465 Meeting Street, Suite 500, Charleston, South Carolina 29403.    GREP Southwest is a wholly owned subsidiary of Defendant GS Management Services.  GREP Southwest contracts directly with property owners to manage rental properties located in Arizona, Colorado, Hawaii, Iowa, Nebraska, Nevada, New Mexico, Oklahoma, Oregon, and Utah.  As part of its management responsibilities, and at all times material to this Complaint, GREP Southwest has advertised, marketed, promoted, offered, leased, and managed the rental of apartment and residential units to consumers in this District and throughout the United States.

## COMMON ENTERPRISE

22.    Defendants have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, and office locations, and unified advertising and internal operating policies and procedures. Because these Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

## FACTUAL ALLEGATIONS

### Greystar's Services

23.    Greystar brands itself as "The Global Leader in Rental Housing" and touts that it is the "largest operator of apartments in the United States."  As of January 1, 2024, Greystar managed more than 800,000 rental units nationwide (including apartments and beds in student housing properties).  Greystar operates multi-family residential rental buildings and complexes, as well as

active adult and student communities.  The National Multifamily Housing Council ("NMHC") repeatedly has named Greystar as the largest multi-family rental property manager in the United States, including in 2024.[5]

24.     Greystar also promotes itself as the "#1 owner" of rental apartments in the United States.  According to NMHC's 2024 rankings, which are based on data submitted by property owners and define ownership as "exercis[ing] effective control over the asset," Greystar owns over 100,000 residential rental units nationwide.

25.     Greystar provides property management services for rental properties it owns through its subsidiaries and joint ventures, as well as for properties owned by other individual and corporate landlords (rental properties managed by Defendants, whether or not owned by Greystar, are collectively referred to as "Greystar Managed Properties").

26.     When a Greystar-owned property is involved, generally one of Greystar's regional property management subsidiaries will enter into an agreement to provide services to the Greystar subsidiary that holds title to the property.

27.     Defendants enter into property management agreements ("PMAs") with the owners of all Greystar Managed Properties.  Where properties are owned by Greystar, Defendants enter into PMAs with the relevant Greystar subsidiary or holding company that holds title to the property.  The PMAs lay out Greystar's duties to the property owners, including Greystar's responsibility for leasing, marketing, tenant relations, and day-to-day operations at the subject

---

[5] https://www.greystar.com/business-services/property-management (last accessed April 29, 2025).

property.  Greystar's PMAs with Greystar-owned properties do not vary significantly from its PMAs with properties owned by third parties.

28.    Greystar offers a wide range of property management services to its clients. Pursuant to the PMAs, Greystar is generally responsible for:

      a.  advertising available rental units;

      b.   ensuring the information displayed on property websites is accurate;

      c.  communicating with current and prospective tenants;

      d.   leasing rental units to qualified tenants;

      e.   billing tenants and collecting payments;

      f.   marketing properties and maintaining property websites;

      g.  hiring and training all on-site personnel at the property;

      h.  entering into contracts with third-party service providers as the property owner's agent;

      i.  maintaining apartment units and property premises in a habitable condition;

      j.  developing an annual budget for each property and submitting quarterly or annual reports to property owners; and

      k.  ensuring the collection of tenants' monthly payments.

29.    As property manager, Greystar is responsible for all tenant relations on behalf of the property owner.  In most circumstances, Greystar is the main point of contact for consumers interested in renting a unit at Greystar Managed Properties and for tenants residing in those properties.

30.    In exchange for these services, property owners generally pay Greystar the greater of a flat fee or a percentage of the Greystar Managed Property's gross rental revenue.  Depending on the specific agreement between Greystar and the property owner, the calculation of the gross rental revenue may include all nonrefundable amounts collected from tenants, including any hidden fees charged to tenants.

31.    Had Plaintiff been aware of Greystar's illegal practices as to the illegal Utility Reimbursement Fees, Plaintiff would have never entered into a lease agreement with Defendants.

**Greystar is a Fully Integrated Business**

32.    While Greystar maintains a complicated web of corporate entities on paper, it operates and holds itself out to the world as one unified business.  Greystar markets itself as a provider of "fully integrated real estate services" with a "vertically-integrated business model."  In selling itself to clients, Greystar promotes its cohesive operations.  On Greystar.com, the company touts the "Greystar Advantage," which includes "[s]ystems, technologies and toolkits to ensure consistency in how we operate our properties and serve our residents."[6]

33.    Many of Greystar's functions are standardized across its operations. For instance, Greystar relies on consolidated enterprise services to provide support across all of Greystar's lines of business in the United States, including for human resources, corporate technology services, risk management, and corporate accounting and tax. It also maintains a dedicated Support Services team to provide client services, marketing, finance, technology, and business systems for its property management functions. Greystar employs common internal operating policies and

---

[6] https://www.greystar.com/regions/north-america/united-states-business-services (last accessed April 29, 2025).

procedures for its property management functions, has executives who simultaneously serve in roles with GREP LLC, GREP General Partner, GS Management Services, and RS National, and shares common registered business addresses for each of the Defendants. Additionally, Greystar frequently enters into contracts that apply across the entire organization.

34.    Greystar's primary corporate website, Greystar.com, also presents the company as a single entity.  For example, on the Greystar.com website, Greystar touts that it has a "presence in 161 markets in the US, supported by 49 offices" and highlights its "Regional Offices" throughout the country; advertises all the properties it manages; lists job postings for a wide range of positions across Greystar's corporate landscape; issues press releases boasting of Greystar's activities, generally without specifying the corporate entity directly responsible; defines Greystar Real Estate Partners, LLC as "Greystar" in the website's "Terms of Use"; and advises that its privacy policy applies to information Greystar receives in a wide range of situations, including "[t]hrough the Greystar websites operated by Greystar and its affiliates."

35.    Greystar's website specifically identifies many of its regional subsidiaries, including Defendant GREP Southwest, as doing business as "Greystar."[7]

36.    The property-specific online platforms that Greystar manages for each property, regardless of which specific subsidiary is contracted for property management, are branded with the "Greystar" logo. Clicking on the logo takes the user to Greystar.com.[8] Likewise, clicking on the "Privacy Policy" link at the bottom of the website also directs the user to Greystar's Global Privacy Policy webpage on Greystar.com.[9]

---

[7] https://www.greystar.com/disclosures-and-licenses (last accessed April 29, 2025).
[8] *See, e.g.,* *https://www.liveatonewest.com/* (last accessed April 29, 2025).
[9] *Id.*

37.     Tenants and prospective tenants may also be unable to identify which Greystar entity they are dealing with. The email domain Greystar generally uses for contact emails for the properties it manages is "@greystar.com," regardless of the specific Greystar corporate entity contracted to manage the property. Finally, lease agreements at many of Greystar's managed properties refer the tenant to www.greystar.com/privacy for information about the applicable privacy policy.

### Greystar's Deceptive Fees

38.     Greystar deceptively advertises monthly leasing costs that are lower than the actual price tenants must pay to lease Greystar rental units.  The actual price is higher than the advertised price because Greystar adds on numerous mandatory fees.  In addition to advertising deceptively low rental prices, Greystar fails to adequately inform prospective tenants about these fees.

39.     The Hidden Fees vary depending on the specific Greystar Managed Property, but typical examples include:

a.  valet trash fees (often $25-35 per month, in addition to any separate charge for residential trash collection);

b.  package delivery or package concierge fees (generally $15-20 per month);

c.  media and/or smart home technology package charges (ranging from $75-175 per month)[10];

d.  fixed charges for common area utilities or maintenance (generally $15-25 per month);

---

[10] *Federal Trade Commission & The State of Colorado ex rel. v. Greystar Real Estate Partners, LLC et al.*, 25-cv-165 (DCCO), ECF #1 Page 12, ¶ 35.

    e.   monthly administrative fees for the dissemination of utility bills on top of the tenant's portion of the utility charges (often between $4-8 per month), and one-time administrative fees to set up and close these utility billing accounts (generally $10-20 each);

    f.   real estate taxes or local ordinance fees (often ranging from $5-25 per month);

    g.   monthly "validation" fees if a tenant chooses to enroll in a renter's insurance plan other than Greystar's default provider (generally $3 per month); and

    h.   pest control fees (typically between $2-5 per month).

40.    Greystar tenants must pay for the services described above, even if the tenants neither want nor use the services.

41.    Between August 2019 and August 2022, on behalf of the property owners, Greystar collected more than $100 million in Hidden Fees from tenants at Greystar Managed Properties in California, Colorado, Nevada, and Utah alone.

**Plaintiff's Experience**

42.    Plaintiff Padilla leased a Greystar Managed Property from November 1, 2022, to October 31, 2023.

43.    Throughout the term of her Lease Agreement with Greystar, Plaintiff Padilla has been illegally and deceptively charged a number of mandatory hidden fees including a monthly Utility Reimbursement Fee that her Lease Agreement with Defendant did not authorize.

13

| Date | Chg Code | Post Month | Description | Charge | Payment | Balance |
|---|---|---|---|---|---|---|
| 11/01/2021 | electrb | 11/2021 | Electric Rebill - 09/01/21-09/30/21 | 5.93 | | 5.93 |
| 11/01/2021 | gasrb | 11/2021 | Gas Rebill - 09/01/21-09/30/21 | 0.75 | | 6.68 |
| 11/01/2021 | pestrb | 11/2021 | Pest Control Rebill - 09/01/21-09/30/21 | 2.00 | | 8.68 |
| 11/01/2021 | sewerrb | 11/2021 | Sewer Rebill - 09/01/21-09/30/21 | 36.52 | | 45.20 |
| 11/01/2021 | trashrb | 11/2021 | Trash Rebill - 09/01/21-09/30/21 | 11.39 | | 56.59 |
| 11/01/2021 | utilreim | 11/2021 | Utility Reimbursement Other - 09/01/21-09/30/21 | 4.40 | | 60.99 |
| 11/01/2021 | waterrb | 11/2021 | Water Rebill - 09/01/21-09/30/21 | 9.45 | | 70.44 |
| 11/01/2021 | rent | 11/2021 | Base Rent (11/2021) | 1,224.00 | | 1,294.44 |
| 11/01/2021 | carport | 11/2021 | Carport Income (11/2021) | 15.00 | | 1,309.44 |
| 11/01/2021 | cablerb | 11/2021 | Cable Rebill (11/2021) | 135.00 | | 1,444.44 |
| 11/03/2021 | | 11/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Celina Padilla (r0845212). NSFed by ctrl# 23172983 Automatic NSF 24R7414NLJ4, Return Code: R01 Uncollected NSF | | 1,444.44 | 0.00 |
| 11/09/2021 | nsffee | 11/2021 | Returned check charge | 20.00 | | 20.00 |
| 11/09/2021 | | 11/2021 | chk# 117165648 Debit Card On-Line Payment ; Roommate Celina Padilla (r0845212) ; Mobile Web - Resident Services | | 1,466.00 | (1,446.00) |
| 11/09/2021 | | 11/2021 | chk# :ACH-WEB NSF receipt Ctrl# 23106128 | | (1,444.44) | (1.56) |
| 12/01/2021 | electrb | 12/2021 | Electric Rebill - 10/01/21-10/31/21 | 5.82 | | 4.26 |
| 12/01/2021 | gasrb | 12/2021 | Gas Rebill - 10/01/21-10/31/21 | 0.98 | | 5.24 |
| 12/01/2021 | pestrb | 12/2021 | Pest Control Rebill - 10/01/21-10/31/21 | 2.00 | | 7.24 |
| 12/01/2021 | sewerrb | 12/2021 | Sewer Rebill - 10/01/21-10/31/21 | 36.75 | | 43.99 |
| 12/01/2021 | trashrb | 12/2021 | Trash Rebill - 10/01/21-10/31/21 | 11.50 | | 55.49 |
| 12/01/2021 | utilreim | 12/2021 | Utility Reimbursement Other - 10/01/21-10/31/21 | 4.40 | | 59.89 |
| 12/01/2021 | waterrb | 12/2021 | Water Rebill - 10/01/21-10/31/21 | 9.42 | | 69.31 |
| 12/01/2021 | cablerb | 12/2021 | Cable Rebill (12/2021) | 135.00 | | 204.31 |
| 12/01/2021 | rent | 12/2021 | Base Rent (12/2021) | 1,224.00 | | 1,428.31 |
| 12/01/2021 | carport | 12/2021 | Carport Income (12/2021) | 15.00 | | 1,443.31 |
| 12/03/2021 | | 12/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Celina Padilla (r0845212). NSFed by ctrl# 23566156 Automatic NSF 86JYMR6NLJ4, Return Code: R01 Uncollected NSF | | 1,443.31 | 0.00 |
| 12/04/2021 | latefee | 12/2021 | Late Fees, 10% of $1224.00 | 122.40 | | 122.40 |
| 12/08/2021 | nsffee | 12/2021 | Returned check charge | 20.00 | | 142.40 |
| 12/08/2021 | | 12/2021 | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Celina Padilla (r0845212). | | 1,470.00 | (1,327.60) |
| 12/08/2021 | | 12/2021 | chk# :ACH-WEB NSF receipt Ctrl# 23512307 | | (1,443.31) | 115.71 |
| 01/01/2022 | electrb | 01/2022 | Electric Rebill - 11/01/21-11/30/21 | 6.25 | | 121.96 |
| 01/01/2022 | gasrb | 01/2022 | Gas Rebill - 11/01/21-11/30/21 | 1.48 | | 123.44 |

44.      Greystar charged Plaintiff a Utility Reimbursement Fee between $4.40 and $4.65 on the first of every month for the duration of her entire lease.

45.      Upon information and belief, it is Greystar's policy to charge multiple Utility Reimbursement Fees regardless of the terms of Greystar's Lease Agreement.

46.      Upon information and belief, Greystar enters into leasing agreements with tenants knowing that it will charge multiple Utility Reimbursement Fees regardless of the terms of Greystar's Lease Agreement.

47.     Had Plaintiff been aware of Greystar's illegal practices as to the illegal Utility Reimbursement Fees, Plaintiff would have never entered into a lease agreement with Defendants.

**CLASS ALLEGATIONS**

48.     Plaintiff brings this action on behalf of herself, and all others similarly situated class members (the "Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, the class and subclass are defined as follows:

**Nationwide Class**

All persons residing in the United States who were charged a Utility Reimbursement Fee by Greystar (the "Class").

**Utah Sub-Class**

All persons residing in the Utah who were charged a Utility Reimbursement Fee by Greystar (the "The Utah Subclass").

49.     Excluded from the Class is Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

50.     Together, the above-mentioned Utah Subclass and Nationwide Class shall be collectively referred to as the "Classes" or "Class." Proposed Members of said Classes will be referred to as "Class Members," or otherwise referenced as "members of the Class."

51.     **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class/Sub-Classes contains thousands of renters who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

52.     **Typicality:** Plaintiff's claims are typical to those of all Class members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive practices.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class and Sub-Class.

53.     **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

    i.    Whether all or some of the Utility Reimbursement Fees are provided for by Defendants' Lease Agreement;

    j.    Whether Defendants' assessment of Utility Reimbursement Fees breached their contract with Plaintiff and Class Members;

    k.    Whether Defendants' assessment of Utility Reimbursement Fees was unfair, deceptive, or misleading;

    l.    Whether Greystar's Lease Agreements identify or describe the method by which Utility Reimbursement Fees will be calculated or determined;

    m.    Whether it is Greystar's policy to charge as many Utility Reimbursement Fees as possible regardless of the terms of Greystar's Lease Agreements; and

    n.    Whether Greystar enters into leasing agreements with tenants knowing that it will charge as many Utility Reimbursement Fees as possible regardless of the terms of the lease agreement.

    o.    Whether the alleged conduct constitutes violations of the laws asserted;

    p.   Whether Defendants' alleged conduct violates public policy;

    q.   Whether Defendants' representations in advertising are false, deceptive, and misleading;

    r.   Whether Defendant was unjustly enriched;

    s.   Whether Plaintiff and the Class Members are entitled to damages and/or restitution and the proper measure of that loss; and

    t.   Whether an injunction is necessary to prevent Defendants from continuing to charge tenants monthly Utility Reimbursement Fees.

54.    **Adequacy:** Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and has the resources and abilities to fully litigate and protect the interests of the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

55.    **Superiority:** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiff and the individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would

be encountered in the management of this case that would preclude its maintenance as a class action.

56.     The Class also may be certified because Defendants acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

57.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above. Further, Plaintiff seeks for Defendants to provide a full refund of Utility Reimbursement Fees to Plaintiff and the Class members.

58.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and the Class members.

59.     Unless a Class-wide injunction is issued, Defendant may continue to commit the violations alleged and the members of the Class and the general public will continue to be misled and suffer damages.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Classes)

60.     Plaintiff incorporates the above allegations as if fully set forth herein.

61.     Plaintiff brings this Count individually and on behalf of the Classes who paid a monthly Utility Fee to Greystar.

62.     Plaintiff's and Class Members' Lease Agreement with Greystar lists all the charges that Greystar can assess against Plaintiff and Class Members.

63.     Plaintiff's and Class Members' Lease Agreement with Greystar provides that the Lease "is the entire agreement" between the parties.

64.     In breach of Plaintiff's and Class Members' Lease Agreement with Greystar, Greystar charged Plaintiff and Class Members monthly Utility Fees that were not provided by the Lease Agreement.

65.     As a result of such Utility Fees, Plaintiff and Class Members and have suffered damages.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Classes)

66.     Plaintiff incorporates the above allegations as if fully set forth herein.

67.     As a result of Plaintiff's payment of application fees and assent to the terms of the Lease Agreement, Greystar owed Plaintiff an implied covenant of good faith and fair dealing.

68.     The implied covenant of good faith and fair dealing required Greystar to honor the reasonable expectations of the parties, to protect the rights of Plaintiff to receive the benefits and protections of the Lease Agreement, and to act in a responsible and rational manner.

69.     Plaintiff complied with all of her obligations to Greystar.

70.     Defendants materially breached its obligations by, inter alia, misrepresenting the true monthly costs under the Lease, and failing to issue refunds.

71.     Plaintiff has incurred, and will continue to incur, damages as a direct result of Greystar's breach in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**Violations of the Utah Consumer Sales Practices Act**
**(On Behalf of Plaintiff and the Classes)**

72.    Plaintiff incorporates the above allegations as if fully set forth herein.

73.    The Utah Consumer Sales Practices Act ("CSPA") prohibits suppliers from committing deceptive acts or practices in connection with a consumer transaction whether the act occurs before, during, or after the transaction. Utah Code § 13-11-4(1).

74.    The CSPA is a remedial statute intended "to be construed liberally…to protect consumers from suppliers who commit deceptive and unconscionable sales practices." *Id.* §13-11-2.

75.    Each Defendant engaged in "consumer transaction[s]" by marketing and advertising products or services that are primarily for personal, family, or household purposes, or for purposes that related to a business opportunity. *Id.* §13-11-3(2), (5).

76.    Each Defendant is a "supplier" because they regularly solicited, engaged in, or enforced consumer transactions. *Id.* §13-11-3(6).

77.    In many instances in connection with advertising and other representations regarding their services, Defendants made or intentionally permitted deceptive representations, directly or indirectly, with the intent that consumers rely on the deceptive representations, as alleged herein including but not limited to:

a.    Engaging in false, misleading, and deceptive acts and practices by charging Plaintiff and the Utah Subclass Utility Reimbursement Fees not provided for by their respective lease agreements with Greystar.

     b.   Engaging in false, misleading, and deceptive acts and practices by representing in its billing that many (if not all) of the Utility Reimbursement Fees that it billed to Plaintiff and the Utah Subclass were provided for or authorized by Plaintiff's and the Utah Subclass Members' respective lease agreements with Greystar.

     c.   Engaging in false, misleading, and deceptive acts and practices by entering into lease agreements with Plaintiff and the Utah Subclass that Greystar, at the time of their consummation, intended to breach by later charging Utility Reimbursement Fees not provided for by Greystar's respective lease agreements with consumers.

78.    Defendants knowingly or intentionally engaged in the above violations, which targeted and affected Utah residents.

79.    Defendants also knowingly or intentionally condoned and facilitated these violations through a deliberate lack of oversight, deliberate lack of training, and creation of an incentive structure that incentivized the violations.

80.    Greystar's false, misleading, and deceptive acts and practices have caused Plaintiff and the Utah Subclass economic damages and mental anguish.

81.    As a result of Defendants' false, misleading, and deceptive acts and practices, Plaintiff seeks treble damages, equitable relief, prejudgment interests, and costs and reasonable and necessary attorneys' fees.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

82.    Plaintiff incorporates the above allegations as if fully set forth herein.

83.     Plaintiff and the Classes bestowed benefits upon Defendants in the form of monies that were paid for Utility Fees which were not disclosed in Plaintiff's and the Classes' Lease Agreements. These benefits bestowed by Plaintiff were not a donation. In exchange for this monetary benefit, Defendants conferred no benefit upon Plaintiff and Class Members beyond what Plaintiff and Class Members were already entitled to under their Lease Agreements with Greystar.

84.     As a result of Greystar's wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained such wrongful benefits.

85.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

86.     As a result of Greystar's wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

87.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

88.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the hidden Utility Fees charged to Plaintiff and members of the Class.

89.     Defendants' retention of such funds under circumstances making it inequitable to do so, constitutes unjust enrichment.

90.     The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.

91.     Greystar should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

92.     Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

## FIFTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiff and the Classes)

93.     Plaintiff incorporates the above allegations as if fully set forth herein.

94.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

95.     An actual controversy has arisen in that Plaintiff alleges that Greystar charges Plaintiff and the Class Utility Fees not provided for by their respective lease agreements with Greystar.

96.     Plaintiff and the Class will continue to suffer injury because Greystar will continue to charge Plaintiff and the Class Utility Fees not provided for by their respective lease agreements with Greystar.

97.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, that many (if not all) of the Utility Fees charged by Greystar to Plaintiff and the Class are not provided for by their respective lease agreements with Greystar.

98.     The Court also should issue corresponding prospective injunctive relief enjoining Greystar from charging Plaintiff and the Class for Utility Fees not provided for by their respective lease agreements with Greystar.

99.     If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury and lack an adequate legal remedy.

100.     The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Greystar if an injunction is issued as Greystar has pre-existing legal obligations to not charge for Utility Fees not provided for by the respective lease agreements.

101.     Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing the unjust enrichment of Greystar at consumers' expense.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendants as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class/Sub-Class, and requiring Defendants to bear the costs of class notice;

B.     An order enjoining Defendants from engaging in the wrongful conduct alleged herein;

C.     An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

D.     An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

E.  An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

F.  An order requiring Defendants to disgorge any ill-gotten benefits received from Plaintiff and members of the Class/Sub-Class as a result of any wrongful or unlawful act or practice;

G.  An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

H.  An order awarding attorneys' fees and costs to Plaintiff and the Class/Sub-Class; and

I.  An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 30, 2025

MARSHALL OLSON & HULL, PC

BY:    /s/ Anikka T. Hoidal
       JASON R. HULL
       ANIKKA T. HOIDAL

POULIN | WILLEY | ANASTOPOULO, LLC
PAUL J. DOOLITTLE*

* pro hac vice forthcoming

Counsel for Plaintiff and the Proposed Class